

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

**ENTERED**
**12/21/2012**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 10-41521** |
| **DIABETES AMERICA, INC.** | § | **CHAPTER  11** |
| | § | |
| Debtor(s). | § | **JUDGE ISGUR** |
| | § | |
| | § | |
| **H. MALCOLM LOVETT, JR.** | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 12-03286** |
| | § | |
| **FRANK BASILE** | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

The Plan Agent's Motion for Summary Judgment, (ECF No. 10), is granted.  Basile's security interest is unperfected.  The security interest is avoided.  Basile's claim is unsecured. Basile's Motion for Summary Judgment, (ECF No. 11), is denied.

### Background

The parties do not dispute the relevant material facts.  Diabetes America, Inc. (the Debtor) filed a chapter 11 bankruptcy petition on December 21, 2010.  (Case No. 10-41521, ECF No. 1).

On January 14, 2011, Frank Basile filed a fully secured proof of claim in the amount of $161,402.39.  (Case No. 10-41521, Claim's Register #10).  The claim relates to a promissory note and loan agreement entered into between Frank Basile and the Debtor.  (ECF No. 11 at 15). In exchange for lending $150,000.00 to the Debtor, Frank Basile received a security interest in essentially all of the Debtor's assets.  (ECF No. 11 at 24-25).  Basile filed a UCC-1 financing

statement only in Texas.  (Case No. 10-41521, Claim's Register #10 at 28).

The Debtor filed its second amended disclosure statement and second amended liquidation plan on September 1, 2011.  (Case No. 10-41521, ECF Nos. 298, 299).   On September 2, 2011, the Court approved the second amended disclosure statement.  (Case No. 10-41521, ECF No. 302).

On October 28, 2011, the Debtor filed an objection to Basile's claim.  (Case No. 10-41521, ECF No. 335).

On December 5, 2011, the second amended liquidation plan was confirmed.  (Case No. 10-41521, ECF No. 368).

Under the terms of the confirmed plan and disclosure statement, all of the Debtor's rights (including objections to claim and avoidance actions) vested in the Liquidating Debtor.  (Case No. 10-41521, ECF No. 299 at 21). Additionally, the Plan Agent was granted the authority to prosecute the claim objections on behalf of the Liquidating Debtor.  (Case No. 10-41521, ECF No. 299 at 22).

H. Malcolm Lovett, Jr. (the "Plan Agent") filed this adversary proceeding on June 27, 2012, objecting to Basile's claim.  (ECF No. 1).  The complaint alleges that Basile's security interest was an avoidable § 547 preferential transfer to an insider and that Basile's security interest was not properly perfected.  (ECF No. 1 at 3-5).  The complaint requests reclassification of the claim as a general unsecured claim, and seeks to exclude any claim for postpetition interest or attorney's fees.  (ECF No. 1 at 5).

The Plan Agent and Basile filed competing motions for summary judgment.  (ECF Nos. 10, 11).  The Plan Agent moved for summary judgment only on the issue of perfection.  (ECF No. 10).  Basile filed a cross motion for summary judgment.  (ECF No. 11).

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate:  (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[1]  Fed. R. Civ. P. 56(c)(1).  The Court need consider only the cited materials, but it may consider other materials in the record.  Fed. R. Civ. P. 56(c)(3).  The Court should not weigh the evidence.  A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  However, a party may object

---

[1] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order.  Fed. R. Civ. P. 56(e).

that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Malacara*, 353 F.3d at 403. Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. *Sossamon*, 560 F.3d at 326. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Norwegian Bulk Transp. A/S*, 520 F.3d at 412. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Celotex*, 477 U.S. at 324. The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

**Analysis**

I.      **Postconfirmation Standing**

Basile challenges whether the Plan Agent has standing to avoid a transaction under § 544 of the Bankruptcy Code.   Postconfirmation standing as it relates to Diabetes America's confirmed plan and disclosure statement was recently addressed in a related adversary proceeding—*Lovett v. Cardinal Health, Inc.*, Case No. 12-3284.

The Plan Agent has standing to bring these claim objections and § 547 preference actions.   Similarly, the Plan Agent has retained the right to utilize the strong-arm powers provided to the trustee under to § 544(a).[2]

Article 10.5 of the Disclosure Statement is entitled "Preservation of Claims and Rights" and reads, in part, as follows:

> Confirmation of this Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief unless this Plan or the Confirmation Order specifically and unambiguously so provides.   The non-disclosure or non-discussion of any particular Claim, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief.

> The Debtor, the Liquidating Debtor, and the Plan Agent reserve any and all claims and rights against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution date, including, without limitation, any and all Causes of Action, Rights of Action and/or claims for relief that the Debtor, the Liquidating Debtor or the Plan Agent has against (i) any insurer and/or insurance policies in which either the Debtor and/or their current or former

---

[2] Although intertwined with his estoppel argument, Basile appears to argue that the Plan Agent may not retain the right to use the strong-arm powers of § 544(a).  (ECF No. 11 at 6) ("The Plan Agent is not a Chapter 7 or Chapter 11 Trustee with express strong arm powers.  The Plan Agent is only authorized to object to claims on behalf of the Liquidating Debtor.").  Section 544(a) of the Bankruptcy Code explicitly gives the trustee (and therefore the estate) certain rights.  11 U.S.C. § 544(a) ("The trustee shall have . . . the rights and powers of . . . .").  The strong-arm powers allow the trustee (or the debtor-in-possession) to recover rights and interest in property.  Section 1123(b)(3) explicitly allows a plan to retain these rights and appoint a representative to enforce these rights postconfirmation. 11 U.S.C. § 1123(b)(3).

personnel have an insurable or other interest in or right to make a claim against, any other of the Debtor's insurers; (ii) any recipient of a transfer identified in the Debtor's statements of financial affairs, including any amendments thereto, filed in this Chapter 11 Case, including but not limited to the parties identified on the attached Schedule 2; and (iii) the Non-Released Parties for claims of breach of fiduciary duty, fraudulent transfer, preferential transfer, unauthorized post-petition transfer under 11 U.S.C. § 549, turnover under 11 U.S.C. §§ 542 and 543, subordination, recharacterization of debt to equity, malpractice, constructive trust, disgorgement, counterclaims, claims to determine the extent and validity of liens under 11 U.S.C. § 506 and any other claims that the Estate may have against such Non-Released Parties. . . .

(ECF No. 298 at 39).  Identical language is used in Article 11.6 of the Plan.  (ECF No. 299 at 34-35).

The Plan defines the following pertinent terms:

- Cause of Action.  Any Claim or cause of action, legal or equitable, now owned or hereafter acquired by the Debtor, the Debtor in Possession or the Estate whether arising under contract or tort, federal or state law, including but not limited to Avoidance Actions, whether commenced prior or subsequent to the Petition Date.

- Avoidance Action.  Any and all rights, claims and causes of action arising under Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code.

- Rights of Action.  Includes (a) any avoidance, recovery, subordination or other action of the Debtor, the Estate or the Liquidating Debtor, (b) any Cause of Action of the Debtor, the Estate or the Liquidating Debtor, (c) any objection or other challenge to a Claim, and (d) any objection or other challenge to an Interest.

(ECF No. 299 at 10, 11, 16).

The rights to bring objections to claim, to bring § 547 preference actions, and to utilize the § 544 strong-arm powers were all specifically and unequivocally retained in a matter satisfying the *United Operating* requirements for postconfirmation standing.

## II.    Basile's Security Interest Unperfected

### a.   Choice of Law

Basile argues that Texas law governs this contract.  (ECF No. 11 at 2).

The Plan Agent does not disagree that Texas law governs the contract.  The Plan Agent argues that it is immaterial because under either Texas law or Delaware law, perfection under these circumstances requires the filing of a financing statement in the office of the Delaware Secretary of State.  (ECF No. 10 at 4).

The contract provides for Texas law and it will be applied.  (ECF No. 11 at 30).

**b.  Law Governing Perfection**

The Texas Business and Commerce Code states: "[e]xcept as otherwise provided in this section, while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral."  TEX. BUS. & COMMERCE CODE § 9.301(1).

Under the Texas UCC, "[a] registered organization that is organized under the law of a state is located in that state."  TEX. BUS. & COMMERCE CODE § 9.307(e).  The parties do not dispute that Diabetes America, Inc. is incorporated in Delaware (that is, organized under the laws of Delaware).  (ECF No. 11 at 3).[3]

Basile argues that § 9.307(b)(3) governs the location of the Debtor.  (ECF No. 11 at 4). Section 9.307(b) explicitly states "except as otherwise provided in this section."  TEX. BUS. & COMMERCE CODE § 9.307(b).  Section § 9.307(e) explicitly provides otherwise.  Diabetes America is located in Delaware.

Although Texas law governs the Loan Agreement, Texas law provides that Delaware law is the law governing perfection in this situation (absent an applicable exception).[4]

---

[3] Diabetes America, Inc. is a "debtor" under both the Bankruptcy Code and Article 9 of the Texas Business and Commerce Code.  The definition of "debtor" under Article 9 of the Texas Business and Commerce Code is much broader than the Bankruptcy Code.  *See* TEX. BUS. & COMMERCE CODE § 9.102(28) (providing as one definition of debtor "a person having an interest, other than a security interest or other lien, in the collateral").

[4] The result would be the same if Delaware law governed the contract.  Delaware Uniform Commercial Code § 9-301 is the same as § 9.301 of the Texas Business & Commerce Code, meaning that Delaware law also indicates that,

### c.   Perfection by Filing of a Financing Statement

The Delaware Uniform Commercial Codes requires that a filing statement be filed in the office of the Delaware Secretary of State in order for a security interest to be properly perfected. DEL. UNIFORM COMMERCIAL CODE § 9-501(a).

Basile does not dispute that he failed to file a financing statement in the Delaware Secretary of State's office.  Basile instead argues that there is an applicable exception to this situation that makes the Texas Secretary of State's office the correct place to file the financing statement.

Basile points to Texas Business & Commerce Code § 9.301(3)(C), which provides exceptions to the general rule set forth in § 9.301(1).  (ECF No. 11 at 4).  The general rule, as shown above, indicates that Delaware law governs perfection as Diabetes America (the debtor) is located in Delaware.

That section states, in pertinent part: "[W]hile tangible negotiable documents, goods, instruments, money, or tangible chattel paper is located in a jurisdiction, the local law of that jurisdiction governs . . . the effect of perfection or nonperfection and the priority of a nonpossessory security interest in the collateral."   TEX. BUS. & COMMERCE CODE § 9.301(3)(C).

Basile misreads the statute.  Assuming § 9.301(3)(C) is applicable to any given item of collateral, Texas law would govern the *effec*t of perfection or nonperfection and the priority of a nonpossessory security interest in the collateral.  Texas law would not be the law governing perfection—that would remain Delaware law.  In other words, if § 9.301(3)(C) were applicable,

---

to the extent Diabetes America is located in Delaware, Delaware law is the law governing perfection.  Delaware Uniform Commercial Code § 9-307 is the same as § 9.307 of the Texas Business & Commerce Code, meaning that under Delaware law Diabetes America is also located in Delaware.  As § 9-301 parallels § 9.301, § 9-301(3)(C) of the Delaware Uniform Commercial Code indicates that Texas law will govern the effect of perfection or nonperfection and the priority of a nonpossessory security interest in certain types of collateral located in Texas, but Delaware law will remain the law governing perfection.

Delaware law would still be the law governing perfection (that is, determining what must be done in order to perfect a security interest in collateral) while Texas law would decide what the effect of perfection or nonperfection would be as well as certain questions of priority.

This is clear from the hanging paragraph that begins § 9.301, which lists three things determined by the rules set forth in § 9.301: (i) the law governing perfection; (ii) the effect of perfection or nonperfection; and (iii) the priority of security interest in the collateral.   If § 9.301(3)(C) is applicable, only the latter two things are changed.   The law governing perfection (here, Delaware law) remains unchanged.

As a result of Basile's failure to file a financing statement with the Delaware Secretary of State's office, Basile's security interest in the collateral was not properly perfected.   DEL. UNIFORM COMMERCIAL CODE § 9-501(a).

### III.     Result of Nonperfection

#### a.   Section 544 Strong-Arm Powers

The Bankruptcy Code provides that:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by . . . a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simply contract could have obtained such a judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1).   In a chapter 11 case, the debtor in possession has these strong-arm powers instead of a trustee.   11 U.S.C. § 1107(a).

Section 544(a)(1) employs a legal fiction.   As explained by the Second Circuit:

> The trustee hypothetically extends credit to the debtor at the time of the [bankruptcy] filing and, at that moment, obtains a judicial lien on all property in which the debtor has any interest that could be reached by a creditor.   The advantage of this status derives not from the Bankruptcy

Code, but from the relevant state law defining creditor rights.
*Musso v. Ostashko*, 468 F.3d 99, 104 (2d Cir. 2006) (citing *In re Kors, Inc.*, 819 F.2d 19, 22-23 (2d Cir. 1987)). Section 544(a)(1) gives the trustee (now the Plan Agent) the powers and rights of such a judgment lien creditor. It is the relevant state law that decides the advantages conferred upon the Plan Agent.

Both Texas law and Delaware law[5] give the Plan Agent priority over Basile's unperfected security interest in this situation. *See* TEX. BUS. & COMMERCE CODE § 9.317(a)(2)(A); DEL. UNIFORM COMMERCIAL CODE § 9-317(a)(2)(A).

As a result of this priority status, the Plan Agent may use § 544(a)(1) to avoid Basile's unperfected security interest. *See LMS Holding Co. v. Core-Mark Mid-Continent*, 50 F.3d 1520, 1523 (10th Cir. 1995) ("Thus, in a bankruptcy proceeding, if the creditor's security interest is not perfected, the creditor 'stands as [a] general unsecured creditor who must defer to the trustee.'") *Sommers v. Int'l Bus. Machines*, 640 F.2d 686, 692 (5th Cir. 1981) ("[S]ince West's security interest in the collateral is unperfected, the trustee was entitled to avoid the obligation under § 544(a)(1)."); *see also* 5 *Collier on Bankruptcy* ¶ 544.03 ("[T]he bankruptcy trustee may use the strong arm clause to avoid unperfected security interests in personal property subject to Article 9 of the U.C.C.").

Basile's unperfected security interest may be avoided by the Plan Agent. Basile is a general unsecured creditor.

### b. Basile's Equitable Arguments

Basile puts forth additional arguments which must be addressed.

---

[5] To the extent the collateral is tangible negotiable documents, goods, instruments, money, or tangible chattel paper and the collateral is located in Texas, Texas law would govern the priority of a nonpossessory security interest in the collateral. TEX. BUS. & COMMERCE CODE § 9.301(3)(C). Otherwise, Delaware law would govern as the debtor (Diabetes America) is located in Delaware. TEX. BUS. & COMMERCE CODE § 9.301(1).

First, Basile argues that the Plan Agent (as the successor to the Debtor's rights and agreements) is estopped from denying the secured nature of Basile's claim.  (ECF No. 11 at 6) ("The Debtor had actual knowledge of the Basile security grant and the filing in Texas.  The Debtor intended the Basile claim to be secured by the designated collateral).  Section 544(a)(1) expressly forecloses these types of estoppel arguments.  11 U.S.C. § 544(a) ("without regard to any knowledge of the trustee or of any creditor").  Furthermore, even if estoppel were applicable, this would not help Basile.  The Loan Agreement cannot trump Texas law:

> *Except as otherwise provided by this title*, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors.

TEX. BUS. & COMMERCE CODE § 9.201(a) (section entitled "General Effectiveness of Security Agreement") (emphasis added).[6]  In other words, the Loan Agreement cannot provide Basile with a perfected security interest with priority over the entire world by simply writing that into a contract.

Second, Basile argues that the Plan Agent should be estopped from denying that Texas law governs this transaction.  (ECF No. 13 at 2).  As explained above, if Texas law governs the Loan Agreement, Texas law indicates that the proper place for filing a financing statement is the Delaware Secretary of State's office.

### Conclusion

The Court will enter an Order in accordance with this Memorandum Opinion.

SIGNED **December 21, 2012.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE

---

[6] The Loan Agreement qualifies as a security agreement, which is defined as "an agreement that creates or provides for a security interest."  TEX. BUS. & COMMERCE CODE § 9.102(74)